## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| RAFAEL SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 C 7707 |
| | ) | |
| OFFICER P. SHEEHAN #456, in | ) | Honorable Joan B. Gottschall |
| his individual and official capacities, | ) | |
| OFFICER NEWMAN #541, in his individual | ) | Magistrate Judge Arlander Keys |
| and official capacities, OFFICER D. | ) | |
| WALKER, in his individual and official | ) | |
| capacities, SGT. WILSON #404, in his | ) | |
| individual and official capacities, | ) | |
| UNKNOWN MARKHAM POLICE | ) | |
| OFFICERS 1 through 4 in their individual | ) | |
| and official capacities and CITY OF | ) | |
| MARKHAM, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION & ORDER**

Plaintiff Rafael Sanders brought this ten-count action pursuant to 42 U.S.C § 1983 and state tort theories against the City of Markham (the "City") and individual City police officers. The City moves to dismiss Counts VIII, IX, and X of the Complaint. Count VIII alleges municipal liability based on the claim that the police officers' misconduct was undertaken pursuant to the City's official policy and practice. *See Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Count IX seeks to hold the City liable under a theory of indemnification, and Count X alleges municipal liability based on *respondeat superior*. Sanders does not object to the dismissal of Counts IX and X. (Pl.'s Resp. 1.) Accordingly, Counts IX and X of Sanders's Complaint are dismissed.

However, Sanders opposes to the City's Motion to Dismiss with respect to Count VIII (*Monell*) of the Complaint. The City contends that Count VIII should be dismissed because Sanders has failed to allege adequately facts supporting his *Monell* claim.

**I. BACKGROUND**

According to the Complaint, on April 18, 2008, Raphael Sanders was driving his vehicle in Markham when he was pulled over by defendant Officer Sheehan. (Compl. ¶¶ 11, 17-19.) At Sheehan's request, Sanders produced his insurance card and what he believed was his driver's license, but what was actually a State of Illinois Identification Card. (*Id.* ¶¶ 20-23.) Officer Sheehan did not issue Sanders a ticket at the site of the traffic stop; instead, Sheehan ordered Sanders to follow him to the police station. (*Id.* ¶¶ 30-34.)

After waiting in his vehicle at the police station, Sanders approached Officer Sheehan, who was having a conversation with Officer Newman near the entrance of the police station. (*Id.* ¶ 39.) Sanders addressed Officer Sheehan and "asked if he could have his tickets, insurance card and identification card so he could be on his way." (*Id.* ¶ 39.) Officer Sheehan initially ignored Sanders, but after Sanders repeated his question, Sheehan responded, "You'll get your tickets when I'm ready." (*Id.* ¶¶ 40-42.) Sanders then stated to Sheehan, "That's fine, I'll go get a supervisor to see if this is procedure because this is harassment." (*Id.* ¶ 43.)

As Sanders turned to walk toward the police station, Officer Newman "grabbed [Sanders] by his shoulder, shoved him into the outside wall of the Markham Police Department and shouted, 'Where the hell are you going?'" (*Id.* ¶ 46.) After a brief exchange between Officer Newman and Sanders, Officer Sheehan "approached Sanders from the side and sprayed pepper-spray directly into [Sanders's] eyes." (*Id.* ¶ 53) Officers Newman and Sheehan then proceeded to attack Sanders by hitting him with their police batons, choking him, kneeing him in the face,

pulling his hair, and using a taser on his torso, thigh and calf. (*Id.* ¶¶ 54-75.) During the assault, Sanders experienced intense pain, bled profusely, and suffered broken bones and dislodged teeth. (*Id.*) Sanders begged for mercy, but the Officers continued to beat him. (*Id.*)

After the assault, Sanders was escorted into the police station, where he was allowed to post bond and call his mother. (*Id.* ¶¶ 76-80.) Sanders's mother first drove him to the orthodontist, and then to the emergency room where his "right leg was put into [a] cast . . . and stitches were used to repair [his] lip." (*Id.* ¶¶ 81-86.) Sanders's injuries required one more trip to the emergency room, and several more visits to different doctors. (*Id.* ¶ 99.)

Following these events, Sanders was charged with two misdemeanors arising from the altercation with Sheehan and Newman, and was issued two traffic citations arising from the initial traffic stop. (*Id.* ¶ 100.) All of the charges were later dismissed. (*Id.* ¶ 105.)

On December 11, 2009, Sanders brought this suit. The Complaint directs several claims against the individual defendants, including: Excessive Force (Count I); False Arrest (Count II); Battery (Count III); Intentional Infliction of Emotional Distress (Count IV); Failure to Intervene (Count V); Denial of Due Process (Count VI); and Conspiracy (Count VII). The Complaint also sets forth Counts VIII through X against the City; those counts are the subject of the City's instant motion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that fails to state a claim upon which relief can be granted. In considering a motion to dismiss, "the court must construe the complaint in the light most favorable to the plaintiff, accepting as true the well-pleaded allegations and drawing all reasonable inferences in plaintiff's favor." *Ellis v. City of Chicago*, No. 09 CV 2889, 2010 U.S. Dist. LEXIS 4704, at *5 (N.D. Ill. Jan. 20, 2010) (citing

3

*Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)). Under the federal notice pleading standard, "all the rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics & Intelligence Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).[1] Although a complaint does not require detailed factual allegations, it must contain "more than labels and conclusions," and "a formulaic recitation of the elements of actions will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion, a complaint must contain enough factual matter "to state a claim to relief that is plausible on its face." *Id.* at 570. While the plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," it does not rise to the level of a probability requirement. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### III. ANALYSIS

Sanders seeks to impose liability on the City under 42 U.S.C. § 1983 for failure to adequately train, supervise and control its officers; failure to adequately punish and discipline prior instances of abuse thereby encouraging future misconduct; making findings of police misconduct only in a disproportionately small number of similar cases; condoning and facilitating a "code of silence" in the Police Department; and failing to act to remedy a pattern of such misconduct, despite possessing actual knowledge of such a pattern. (Compl. ¶¶ 147(a)-(e).)

---

[1] The City notes the fact that "[p]laintiff relies on *pre-Twombly* and *Iqbal* cases in his response brief." However, courts in this district have stated that "[i]n the context of section 1983 municipal liability, district courts in the Seventh Circuit *post-Twombly* and *Iqbal*, have continued to apply *Leatherman's* holding that plaintiffs are not held to a heightened pleading requirement nor are they required to plead specific facts to prove the existence of a municipal policy." *Miller v. City of Plymouth*, No. 2:09-CV-205 JVB, 2010 U.S. Dist. LEXIS 35686, at *17 (N.D. Ind. Apr. 9, 2010); *Diaz v. Hart*, No. 08 C 5621, 2010 U.S. Dist. LEXIS 20671, at *22 (N.D. Ill. Mar. 8, 2010) (reaffirming that *post-Twombly* and *Iqbal*, "plaintiffs are not required to plead specific facts to prove the existence of a municipal policy"). Thus, the fact that Sanders cites cases that predate *Twombly* and *Iqbal* does not weaken his argument, contrary to the City's suggestion.

Pursuant to *Monell,* a municipality may be held liable under 42 U.S.C. § 1983 where an action pursuant to official municipal policy caused a constitutional tort. *See* 436 U.S. at 690. To satisfy *Monell*, a plaintiff must allege the existence of:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a 'custom or usage' with force of law"; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995) (quoting *Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994). Sanders makes clear in his brief that he seeks to allege only the second option outlined in *McTigue*, *i.e.*, a widespread practice that amounts to a custom of constitutional deprivation.

The City contends that Sanders's *Monell* claim is insufficient for two reasons. First, the City argues that Sanders makes boilerplate allegations that are insufficient to support a claim that the policy he describes actually exists. (Mot. to Dismiss 5.) Additionally, the City argues that because Sanders's claim is "based on alleged misconduct directed only against himself, it cannot support a *Monell* claim." (Def.'s Reply Brief in Support of Mot. to Dismiss 9.)

**A.      Sanders's Allegations Provide the City with Sufficient Notice**

The parties initially dispute how the general notice pleading standard applies to *Monell* claims. This dispute is based on a shift in applicable Seventh Circuit case law, as the cases cited by the parties make clear.

The City relies on *McTigue*, 60 F.3d at 382, to argue that Sanders "fails to allege any facts to support a claim of an express municipal policy or 'widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled.'" (Mot. to Dismiss 5.) In *McTigue*, the plaintiff, a City of Chicago employee, filed suit against the City,

5

alleging that his due process rights were violated pursuant to an improper City policy whereby disciplined employees were not receiving "fair and impartial hearings before the Personnel Board . . . ." 60 F.3d at 382. McTigue alleged in his complaint that "pursuant to a policy, practice and well established custom of the City of Chicago and its Personnel Board, the Personnel Board and its Hearing Officers have been biased and partial against the employees and in favor of the city." *Id.* McTigue also included statistics in his complaint contrasting the different rates of success for challenges decided by the review board and those decided by neutral arbitrators, but the court held that "[n]owhere is it alleged with any particularity how these statistics reflect an improper City policy." *Id.* at 383. Noting that "[b]oilerplate allegations of a municipal policy, entirely lacking in any factual support that a [municipal] policy exist, are insufficient" to support a § 1983 claim, the court found that the pleadings were devoid of any factual support to bolster plaintiff's allegations, and did not meet the requirements of notice pleading. *Id.* at 382-83.

The City also points to *Woods v. City of Chicago*, No. 98 C 7092, 1999 U.S. Dist. LEXIS 6281, at *7 (N.D. Ill. Apr. 19, 1999), in support of its contention that Sanders's complaint fails to satisfy the notice pleading requirements of Rule 8. In *Woods*, the plaintiff alleged that the City had an unconstitutional policy of "authorizing its police officers to make a full custodial arrest for a misdemeanor that did not involve a breach of the peace and that had not been committed in the officer's presence." *Id.*, at *2. Although the court stated, "complaints need not conform to any heightened pleading requirements" when alleging an improper municipal policy under § 1983, the court ultimately held that Woods' allegations were not enough to withstand a motion to dismiss. *Id.*, at *5, *7.

In response, Sanders argues that the Seventh Circuit's more recent decision in *McCormick v. City of Chicago*, 230 F.3d 319 (7th Cir. 2000), and not *McTigue* or *Woods*, controls in this case. In *McCormick*, the Seventh Circuit, relying on the Supreme Court's ruling in *Leatherman*, reversed the district court's dismissal of the plaintiff's municipal liability claim. *Id.* at 323, 328 (citing *Leatherman*, 507 U.S. at 164 (holding that a federal court may not "apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure—in civil rights cases alleging municipal liability under Rev. Stat. § 1979, 42 U.S.C. § 1983")). The *McCormick* court acknowledged that the pleading standard for a plaintiff bringing a municipal liability suit was confusing in light of its own prior rulings.[2] *Id.* at 324. Still, the court found that, based on "*Leatherman* and its progeny," a single paragraph of allegations with "a number of conclusions" that the City's "highest policymaking officers" engaged in a "widespread custom" of discrimination sufficed to state a claim for municipal liability. 230 F.3d at 322, 324, 325.[3]

The *McCormick* court distinguished *McTigue*, noting that the plaintiff's complaint in *McTigue* was insufficient because it left out "operative facts which form the basis of [plaintiff's] claim," leaving the defendant without "a complete understanding of the claims made against them," and "no notice of the crux of plaintiff's charges." *Id.* at 325. The plaintiff's complaint in

---

[2] The Seventh Circuit illustrated a previous inconsistency in its rulings on § 1983 municipal liability pleadings by reference to two cases. In *Jackson v. Marion County,* 66 F.3d 151, 153 (7th Cir. 1995), the court held that that a plaintiff "need not plead facts; he can plead conclusions." On the other hand, the court held in *Kyle v. Morton High Sch.,* that a plaintiff could not state a claim by simply attaching a "bare conclusion to the facts he narrates." 144 F.3d 448, 455 (7th Cir. 1998) (quoting *Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648, 654 (7th Cir. 1984)). In *McCormick*, the court remedied the confusion by stating that "[i]n *Leatherman*, the Supreme Court reminded us that the Federal Rules of Civil Procedure, as currently formulated, do not permit the courts to dismiss § 1983 municipal liability claims for lack of factual specificity under Rule 12(b)(6)." 230 F.3d at 325.

[3] The City argues that the "instant case is distinguishable from *McCormick* because the Plaintiff herein is represented by an attorney and the Plaintiff's Complaint is thus not to be liberally construed." (Def.'s Reply 4.) The Court cannot agree. Regardless of whether a litigant is represented by an attorney or not, "the liberal notice pleading requirements of the Federal Rules apply to all plaintiffs." *Glover v. Village of Oak Lawn*, No. 00 C 2515, 2000 U.S. Dist. LEXIS 18155, at *9 n.3 (N.D. Ill. Dec. 13, 2000).

7

*McCormick*, however, was sufficient because "the factual cause of McCormick's claim [was] clear . . . ." *Id.*

After *McCormick*, the issue of "whether [plaintiff's] allegations, even if bare and boilerplate, give notice of [the plaintiff's] claims against the City," was directly addressed by another court in this district in *Frieri v. City of Chicago*, 127 F. Supp. 2d 992, 995 (N.D. Ill. 2001). In *Frieri*, the complaint alleged that the "officers used excessive force and that the City 'has failed to properly train and supervise and discipline the Defendant Officers on when such use of force is necessary and/or appropriate, which evinces a custom, policy or practice by the Defendant City of Chicago.'" *Id.* (quoting complaint). The complaint also stated that the City "failed to investigate, discipline, reprimand or instruct its officers in any way for and because of the malicious and unconstitutional actions of its officers, thus evincing a policy, practice and custom of encouraging and condoning such acts." *Id.* (quoting complaint).

The *Frieri* court rejected the defendant's argument that the complaint should be dismissed because the complaint contained merely "boilerplate allegations" of a municipal policy. *Id.* The court recognized that after *McCormick*, even boilerplate allegations of a policy are sufficient to withstand dismissal so long as such allegations provide adequate notice of the claim. *Id.* at 995 n.3. Accordingly, the plaintiff's complaint in *Frieri* "satisfie[d] Rule 8(a) because it [gave] the City notice of the specific alleged policies against which it must defend: failure to train officers to prevent constitutional violations, and failure to discipline them for committing [the violations]." *Id.* at 995. This court and other courts in this district have applied *McCormick* as the *Frieri* court did. *See Glover v. Village of Oak Lawn*, No. 00 C 2515, 2000 U.S. Dist. LEXIS 18155, at *7, *9-*10 (N.D. Ill. Dec. 13, 2000) ("Although there is language in [both *McCormick* and *McTigue*] supporting defendants' position, the court believes that the

Seventh Circuit's more recent decision in [*McCormick*] controls this case."); *see also Wiek v. City of Chicago*, No. 09 CV 920, 2010 U.S. Dist. LEXIS 47884, at *11-*12, (N.D. Ill. May 12, 2010) ("[The plaintiff's] burden is simply to allege facts that would give the City notice of his municipal liability claim.").

In this case, the City asserts that Sanders fails to set forth specific facts of wrongdoing. However, based on *McCormick*, *Frieri*, and *Wiek*, the Complaint alleges facts sufficient to give the City notice of the specific policies against which it must defend. The Complaint states that, "[a]s a matter of both policy and practice, the Defendant City of Markham directly encourages and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control their officers . . . ." (Compl. ¶ 147(a).) He further alleges that the City facilitates and encourages the recurrence of the same abuses by making findings in only a disproportionately small number of cases, and by failing to adequately punish or discipline prior instances of similar misconduct. (*Id.* ¶¶ 147(b)-(c).) Sanders also avers that "[m]unicipal policy-makers in the Defendant City of Markham are aware of (and condone and facilitate by their inaction) a code of silence in the Markham Police Department, by which officers fail to report misconduct committed by other officers." (*Id.* ¶ 147(d).) As Sanders points out in his Response, he has included over 100 paragraphs outlining the alleged misconduct exemplifying the City's unconstitutional policy with detail. Accordingly, the Complaint provides the City with adequate notice of his municipal liability claims, and the City's first ground for dismissal of Count VIII fails.

**B.  Sanders's Specific Allegations of Misconduct Are Sufficient to Support a *Monell* Claim**

The City further argues that the plaintiff "stymies his *Monell* claim because the only factual allegations are based on alleged misconduct directed to the Plaintiff himself." (Def.'s

9

Reply 8.) The City develops this argument for the first time in reply, and therefore has waived it. *See Abstract & Title Guar. Ins. Co. v. Chi. Ins. Co.*, 489 F.3d 808, 812 (7th Cir. 2007). In any event, this argument lacks merit. The City relies on a footnote in *Ellis*, 2010 U.S. Dist. LEXIS 4704, at *12 n.2, which states, "A plaintiff's isolated personal experiences cannot alone establish a municipal liability claim . . . ." However, the complaint in *Ellis* failed to satisfy *Monell* because "the scope and nature of the implied municipal practice remain[ed] a mystery," and not because the plaintiff's allegations concerned her own isolated experiences. *Id.,* at *12. As the *Ellis* court further noted, "Even conclusory statements in the vein of *McCormick* and its progeny do not appear." *Id.*, at *11. The *Frieri* court addressed a complaint that included not only similar individualized allegations to those set forth in the *Ellis* complaint, but also boilerplate *Monell* allegations, which were not present in *Ellis*. *See* 127 F. Supp. 2d at 996. The *Frieri* court found the allegations before it sufficient, noting that the City had "confuse[d] the plaintiff's burden to establish liability to win the lawsuit—at trial or summary judgment—with the plaintiff's minimal burden to give notice of her claims to withstand a motion to dismiss." *Id.* at 996 n.4 ("In any event, so long as Ms. Frieri can prove the existence of a policy, one incident is a sufficient basis for Monell liability under § 1983"). Thus, Sanders's specific allegations of misconduct directed at him alone suffice at this stage.

## IV. CONCLUSION

For the reasons stated above, the City's Motion to Dismiss is granted with respect to Counts IX and X, and denied with respect to Count VIII.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 26, 2010