UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAFAEL SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 C 7707 |
| | ) | |
| OFFICER P. SHEEHAN #456, in his individual and official capacities, | ) ) | Honorable Joan B. Gottschall |
| OFFICER NEWMAN #541, in his individual and official capacities, OFFICER D. WALKER, in his individual and official capacities, SGT. WILSON #404, in his individual and official capacities, UNKNOWN MARKHAM POLICE OFFICERS 1 through 4 in their individual and official capacities, and CITY OF MARKHAM, | ) ) ) ) ) ) ) ) ) ) ) | Magistrate Judge Arlander Keys |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION & ORDER

Plaintiff Rafael Sanders brought this ten-count action pursuant to 42 U.S.C § 1983 and state tort theories against the City of Markham (the "City"), police officers Sheehan, Newman, Walker, and Wilson, and four additional, unknown City police officers. The court previously granted in part and denied in remaining part the City's motion to dismiss Sanders' allegations regarding municipal liability. (*See* Doc. 46.) Presently before the court are the City's, Newman's, Walker's, and Wilson's motion to dismiss (Doc. 21) and Sheehan's motion to dismiss (Doc. 37).

#### I.  BACKGROUND

According to the Complaint, on April 18, 2008, Raphael Sanders was driving his automobile in Markham when he was pulled over by defendant Officer Sheehan.

(Compl. ¶¶ 11, 17-19.) Sanders was unable to produce a valid driver's license, but instead produced his State of Illinois Identification Card. (*Id.* ¶¶ 20-23.) Sheehan ordered Sanders to follow him to the police station. (*Id.* ¶¶ 30-34.)

Sanders waited outside the police station for some time, then asked Sheehan and Officer Newman if he could have his citation for driving without a license, along with his proof of insurance and identification card. (*Id.* ¶ 39.) Sheehan told Sanders that he would get his tickets when Sheehan was ready. (*Id.* ¶¶ 40-42.) Unsatisfied, Sanders turned to enter the police station to find Sheehan's supervisor. (*Id.* ¶ 43.) However, Newman stopped Sanders and pressed him against the station wall. (*Id.* ¶¶ 46.) Sheehan sprayed pepper spray into Sanders's eyes (*id.* ¶ 53), and both officers attacked Sanders by hitting him with their police batons, choking him, kneeing him in the face, and pulling his hair (*id.* ¶¶ 54-75). Sanders, in extreme pain, begged for mercy, but the beating continued. (*Id.*) During the beating, Sanders was handcuffed. (*Id.* ¶¶ 73, 75.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that fails to state a claim upon which relief can be granted. In considering a motion to dismiss, "the court must construe the complaint in the light most favorable to the plaintiff, accepting as true the well-pleaded allegations and drawing all reasonable inferences in plaintiff's favor." *Ellis v. City of Chicago*, No. 09 CV 2889, 2010 U.S. Dist. LEXIS 4704, at *5 (N.D. Ill. Jan. 20, 2010) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)). Under the federal notice pleading standard, "all the rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County*

*Narcotics & Intelligence Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although a complaint does not require detailed factual allegations, it must contain "more than labels and conclusions," and "a formulaic recitation of the elements of actions will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion, a complaint must contain enough factual matter "to state a claim to relief that is plausible on its face." *Id.* at 570. While the plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," it does not rise to the level of a probability requirement. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### III.   ANALYSIS

The City, Newman, Walker, and Wilson move to dismiss Counts II, III, IV, and VII, as well as all allegations against the individual defendants in their official capacities. Sheehan joins in the other defendants' motion, and advances an additional argument for the dismissal of Count II. Sanders has no objection to the dismissal of Counts III and IV, which are accordingly dismissed. The court addresses each remaining count in turn.

**A.   Count II**

In Count II, Sanders brings a claim pursuant to § 1983 for false arrest. Sheehan argues that Sanders's initial allegations of false arrest, which pertain to Sanders's traffic stop by Sheehan, fail to state a claim; all individual defendants maintain that Sanders's allegations of arrest once he arrived at the police station are insufficient.

   1.   <u>Sheehan</u>

Sheehan argues that Sanders has pled himself out of court by alleging that he did not have his driver's license when Sheehan stopped him. Sheehan is correct that Illinois

3

law requires that a licensee have his license in his possession when driving a motor vehicle and display the license upon demand by a police officer. 625 Ill. Comp. Stat. 5/6-112. Sheehan is also correct that "[p]robable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (citing *Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir. 1997)).

Nevertheless, Sanders's allegations suffice. A traffic stop that is unreasonable under the circumstances is actionable as a false arrest. *See Phelan v. Village of Lyons*, 531 F.3d 484, 488 (7th Cir. 2008) (reversing summary judgment for defendant on false arrest claim when officer had no reasonable basis for making traffic stop); *Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 458 (7th Cir. 2010) (same). In his complaint, Sanders alleges that, when he was pulled over by Sheehan, he had not "commit[ted] any traffic violations, block[ed] the roadway, or obstruct[ed] the flow of traffic." (Compl. ¶ 14.) Construing this allegation in the light most favorable to Sanders, he alleges that Sheehan had no basis to stop him. No other allegations in Sanders's complaint suggest that Sheehan had an objectively reasonable basis for stopping Sanders. Accordingly, Sheehan's motion is denied insofar as it seeks dismissal of Sanders's allegations of false arrest based on the traffic stop.

2. <u>Individual Defendants</u>

Defendants Newman and Walker, joined by Sheehan, also move to dismiss Sanders's Count II for failure to state a claim on which relief can be granted. Sanders alleges that he "was seized" (Compl. ¶ 117) and "was . . . handcuffed by an unknown

4

police officer" (*id.* ¶ 73). Defendants argue that they cannot be liable for Sanders's arrest because he does not allege who arrested him.

Sanders adequately alleges the participation of Sheehan, Newman, and Walker in his arrest. To be liable for false arrest pursuant to § 1983, an individual must have "caused or participated" in the arrest. *Jenkins v. Keating*, 137 F.3d 577, 583 (7th Cir. 1998); *Wheeler v. Lawson*, 539 F.3d 629, 633-34 (7th Cir. 2008). Here, Sanders alleges that, at the time he was handcuffed, Sheehan and Newman were "striking [him] about his body with their respective extendable police batons." (Compl. ¶ 72.) He further alleges that defendant Walker, along with four unknown City police officers, used a taser on him. (*Id.* ¶ 68.) While he was being beaten, Sanders was "on the ground [and] blind" by virtue of Sheehan's use of pepper spray. (*Id.* ¶ 61.) At the time he was handcuffed, Sanders "was completely defenseless . . . ." (*Id.* ¶ 73.) Sanders does not have to be able to identify the person who actually arrested him because each individual defendant, to be personally liable, needed only to participate in the arrest. Sanders alleges that Sheehan, Newman, and Walker participated in the beating surrounding his arrest. Defendants' motion to dismiss is therefore denied with respect to Count II.[1]

**B.     Count VII**

In Count VII, Sanders brings a § 1983 conspiracy claim. Defendants argue that Sanders's conspiracy allegations fail because he does not allege any conduct by a private actor. Sanders concedes that he makes no allegations regarding the conduct of private parties, but maintains that his conspiracy claim is nevertheless actionable.

---

[1] In response to defendants' motion to dismiss, Sanders submits an arrest report and other documents that, he contends, supplement his allegations and show that Newman, Sheehan, and Walker participated in his arrest. Because the court denies dismissal of Count II based on the allegations in Sanders's complaint, it need not consider this additional argument.

The source of defendants' argument is this Seventh Circuit statement regarding § 1983 conspiracy claims:

> To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) <u>a state official and private individual(s) reached an understanding</u> to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents.

*Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) (emphasis added) (internal citation and quotation marks omitted); *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007); *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998); *Brokaw v. Mercer County*, 235 F.3d 1000, 1016 (7th Cir. 2000); *Hanania v. Loren-Maltese*, 212 F.3d 353, 356 (7th Cir. 2000). Despite this statement, the court of appeals has never held that a § 1983 conspiracy claim was invalid because it implicated the conduct only of state actors. Rather, the court, in applying the rule as articulated above, has addressed only what was necessary to charge private actors as part of a § 1983 conspiracy. *See, e.g.*, *Williams*, 342 F.3d at 785-86 (finding insufficient evidence of agreement between private and state actors); *Fries*, 146 F.3d at 458 (same); *see also Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009) ("Because lawyer Cain and therapist Klaung are private persons, Cooney could bring them within the reach of section 1983 only by charging that they had agreed with a state officer to deprive her of constitutional rights."). Many courts in this district have followed what they understand to be the Seventh Circuit's rule and dismissed § 1983 conspiracy claims implicating the conduct only of state actors, and not "a state official and private individual(s)." *Thayer v. Chiczewski*, No. 07 C 1290, 2007 WL 3447931, at *5 (N.D. Ill. Nov. 13, 2007); *Wright v. Village of Franklin Park*, No. 05 C 3696, 2008 WL 820560, at *28 (N.D. Ill. Mar. 25, 2008); *see also Doe ex rel. Doe v. V. of T.*, No. 02 C 7680, 2008 WL 4450317, at *10 (N.D. Ill. Sept. 30, 2008), *aff'd sub nom.*

6

*Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Still, none of these district courts have analyzed why the absence of a private actor invalidates a § 1983 conspiracy claim.

Like the Seventh Circuit's analysis of § 1983 conspiracy claims, two seminal Supreme Court cases recognize the validity of such claims as a means of holding private actors liable pursuant to § 1983, and do not explicitly address the necessity of a private actor to support such a conspiracy. In *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598 (1970), the Court addressed a claim that a private restauranteur and a police department "'conspired together to deprive plaintiff of her right to enjoy equal treatment and service in a place of public accommodation.'" *Id.* at 150-51 n.5. The court noted that a § 1983 claim generally requires that the plaintiff prove (or in this context, allege) "that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States," and that the defendant, in depriving the plaintiff of such a right, "acted 'under the color of law.'" *Id.* at 150. The Court further explained that while "[t]he involvement of a state official in . . . a conspiracy plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights, . . . a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983." *Id.* at 152.

The Supreme Court reaffirmed this rule a decade later, stating:

As the Court of Appeals correctly understood our cases to hold, to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting see [*sic*] "under color" of law for purposes of § 1983 actions. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142

7

> (1970); *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966).

*Dennis v. Sparks*, 449 U.S. 24, 27-28, 101 S. Ct. 183 (1980). In *Dennis*, the Court found that allegations that a corrupt, private litigant conspired with a judge to fix the outcome in a case stated a claim for relief against the litigant (but not against the judge, who enjoyed immunity from suit). *Id.* at 28-29. As in *Adickes*, the *Dennis* Court focused on whether the private defendant's conduct could be considered "under the color of law."

The court does not doubt that a state official's conduct is necessary to state a valid § 1983 claim or that a private individual's conduct may be "under the color of law" when pursuant to an agreement with a state official. Both of these uncontroversial propositions are borne out by the Supreme Court and Seventh Circuit precedent discussed above. Yet none of those appellate cases stand for the proposition that private conduct is indispensable to a § 1983 conspiracy claim, and § 1983 itself suggests no such requirement. An examination of other case law suggests the contrary.

Other appellate courts, in articulating the standard for § 1983 conspiracy claims, have omitted the problematic language invoked by defendants in this case. For example, the Second and Ninth Circuits have expressed the standard in a way that expressly allows for § 1983 conspiracy claims against only state actors. *See Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (noting that § 1983 conspiracy claims require "an agreement between two or more state actors or between a state actor and a private entity"); *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010) (quoting district court and noting that § 1983 conspiracy claim required "'(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement.'"). The Fourth, Eighth, and

Eleventh Circuits have stated the rule without reference to the private or state nature of the conspirators. *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996) ("To establish a civil conspiracy under § 1983, Appellants must present evidence that the Appellees acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in Appellants' deprivation of a constitutional right . . . ."); *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) ("To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show [*inter alia*] that the defendant conspired with others to deprive him of constitutional rights . . . ."); *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008) ("[T]he plaintiff must prove that the defendants reached an understanding to deny the plaintiff's rights."). *But see Dixon v. City of Lawton, Okla.*, 898 F.2d 1443, 1449 (10th Cir. 1990); *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). Under any of these articulations, Sanders's conspiracy claims would suffice.

The appellate courts cited above, like the Seventh Circuit, did not analyze the question presented here, and so their articulations of the standard are not dispositive of the instant motion. Yet their inconsistency casts some doubt on the necessity of the participation of a private actor in a § 1983 conspiracy claim. Moreover, a number of appellate and district courts, including this one, have found that conspiracy claims against only state actors are viable. *See Benitez v. Delpilar*, No. 95 C 3145, 1996 U.S. Dist. LEXIS 3145, at *4-*7 (N.D. Ill. Mar. 13, 1996); *see Ricciuti v. N.Y.C. Trans. Auth.*, 124 F.3d 123, 131 (2d Cir. 1997) (reversing summary judgment for defendants on conspiracy claim implicating only state actors); *Sassak v. City of Park Ridge*, 431 F. Supp. 2d 810, 821 (N.D. Ill. 2006) (denying dismissal of conspiracy claim brought against only state

9

actors). While none of these cases explicitly addressed whether a § 1983 conspiracy claim can lie against only state actors, they, like the varying articulations of the standard applicable to such a claim, undermine the defendants' argument that a private party's conduct is required to support Sanders's conspiracy claim.

Finally, the Seventh Circuit has observed:

> The doctrine of civil conspiracy extends liability for a tort, here the deprivation of constitutional rights, to persons other than the actual wrongdoer [citation omitted], but it is the acts causing the damage to the plaintiff that give rise to liability for damages, not the conspiracy itself.
>
> . . .
>
> "For a claim under 42 U.S.C. § 1983, a conspiracy is not a vital element. Nevertheless, a conspiracy may be used as the legal mechanism through which to impose liability on each and all the defendants without regard to the person doing the particular act. Mizell v. North Broward Hosp. Dist., 427 F.2d 468, 472-473 (5th Cir. 1970); Nesmith v. Alford, 318 F.2d 110, 126 (5th Cir. 1963) (Cert. denied, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964))."

*Hostrop v. Board of Jr. College Dist. No. 515, Cook and Will Counties and State of Ill.*, 523 F.2d 569, 576 (7th Cir. 1975) (quoting, in part, *Jones v. Bales*, 58 F.R.D. 453, 458 (N.D. Ga. 1972)) (internal quotation marks and citations omitted).

Taking the above discussion in sum, § 1983 conspiracy claims serve two purposes. First, conspiracy claims are a vehicle by which a plaintiff can state a § 1983 claim against private actors who have acted in concert with state actors. The second purpose was recognized by the Seventh Circuit in *Hostrop*: extending the scope of liability for a constitutional tort beyond those who simply commit the tort to each person who agrees to deprive the person of his constitutional rights and acts in furtherance of that agreement. Under this second theory, if several individual state actors conspire to deprive an individual of his constitutional rights, while some, but not all, of the

conspirators effectuate the deprivation, each conspirator who acted in some way in furtherance of the conspiracy can be held liable.[2]

If each conspirator's participation in the conspiracy is the same as each conspirator's involvement in the deprivation of the plaintiff's constitutional rights, "[t]he conspiracy count . . . adds nothing to the substantive count," *id.*, and therefore is duplicative of the other § 1983 claims. But defendants in this case do not argue that Sanders's conspiracy allegations merely duplicate his general § 1983 claims, and the court cannot determine as much at this early stage. *See Nardoni v. Moke*, No. 02 C 944, 2002 WL 1610988, at *5 (N.D. Ill. July 22, 2002). Defendants' motions to dismiss Sanders's Count VII are denied.

**C.      Official Capacity**

Defendants also seek dismissal of Sanders's § 1983 claims against the individual defendants insofar as those claims are stated against the individuals in their official capacities. Defendants contend that these claims are redundant of Sanders's *Monell* claims against the City. Sanders asserts that he should not be limited to seeking relief against the City only via *Monell*, but cites no authority allowing suit against both the City and the individual defendants in their official capacities.

*Monell* applies equally to § 1983 claims against municipal officers in their official capacities as it does to claims against the municipality itself. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006) ("When a plaintiff sues an individual officer in his

---

[2] This is not to say that plaintiff will have an easy time establishing a conspiracy involving several police officers from one department. Among other issues, he will have to deal with the intra-corporate conspiracy doctrine, which may make his proof difficult. *See Chavez v. McIntyre*, 424 F. Supp. 2d 858, 861 (W.D. Va. 2006) (applying exception to intra-corporate conspiracy doctrine and denying dismissal) ; *Banister v. City of Chicago*, No. 06 CV 5759, 2009 WL 393865, at *5 (N.D. Ill. Feb. 12, 2009) (finding intra-corporate conspiracy doctrine inapplicable and denying dismissal).

11

official capacity, the suit is treated as if the plaintiff has sued the municipality itself."); *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) ("Grieveson's claims against the Sheriff in his official capacity are treated as claims against Marion County itself."). As the Seventh Circuit observed in *Jungels v. Pierce*, 825 F.2d 1127 (7th Cir. 1987), a case in which the plaintiff sued a municipality and the municipality's mayor in his official capacity, "[T]here is one defendant-the city-not two; for the complaint names the mayor as a defendant in his official capacity only, which is the equivalent of suing the city. . . . [N]othing was added by suing the mayor in his official capacity." *Id.* at 1129 (citations omitted); *see also Robinson v. Sappington*, 351 F.3d 317, 340 (7th Cir. 2003).

In this case, Sanders's complaint sets forth a *Monell* claim (Compl. at 22), dismissal of which the court previously denied (Doc. 46). Sanders's claims against the individual defendants in their official capacities are the equivalent of suit brought against the City, and must be analyzed pursuant to *Monell*. Sanders's official capacity claims are therefore redundant of his separately stated *Monell* claim insofar as his *Monell* claim is based on the individual defendants' conduct. Accordingly, Sanders's official capacity allegations are dismissed. *Berry v. Ill. Dep't of Human Res.*, No. 00 C 5538, 2001 WL 111035, at *8 (N.D. Ill. Feb. 2, 2001).

## IV. CONCLUSION

For the reasons stated above, defendants' motions to dismiss are granted with respect to Sanders's Counts III and IV and to the extent that Sanders seeks to sue the defendant officers in their official capacities. The motions are denied in all remaining respects. Sanders is granted 21 days to re-plead in a manner consistent with this opinion and the court's prior opinion resolving the City's motion regarding municipal liability.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 12, 2010